## JOHN O. WOODRUFF AND OTHERS *v.* THE COMMERCIAL MUTUAL INSURANCE COMPANY.

A policy of marine insurance contained a provision (in the memorandum clause) that all goods were "warranted by the insured free from damage or injury from dampness, change of flavor, &c., except caused by actual contact of sea water with the articles damaged, occasioned by sea perils." A cargo of grain, shipped in one bulk under this policy, was damaged—one portion by actual contact with sea water, and another portion by dampness or sweat communicated from that part of the cargo which was actually wet.

*Held,* that the insured were entitled to recover for all the damage done by the contact with sea water, whether caused by immersion in the water, or by dampness communicated to the upper portion, from contact of sea water with the lower portion.

A policy of marine insurance contained, in the body thereof, a clause in manuscript making "grain subject to average if damaged ten per cent." The printed memorandum clause annexed to the policy warranted "grain free from average, unless general;" and further warranted it "free from damage or injury from dampness, change of flavor, &c., except caused by actual contact of sea water with the articles damaged, occasioned by sea perils."

*Held,* that the effect of the policy was to insure against loss on grain subject to average, if damaged ten per cent.; but with the warranty that it should be free from damage, except by actual contact with sea water.

*Held,* therefore, that the insured could not recover for damage to the grain insured, resulting from effluvia arising from putrid hides, which formed part of the lading of the vessel. BRADY, J., dissented.

Where an instrument is partly written and partly printed, the manuscript portions must control.

THIS cause came before the general term on a verdict for plaintiffs, taken subject to the opinion of the court upon questions of law reserved. The action was brought to recover upon a policy of insurance made by defendants. This policy covered shipments already made, and others to be made, by plaintiffs, and reported to the company, and endorsed by them on the policy. Among the shipments thus endorsed on the policy, were 7,658 sacks of wheat, mentioned as having been shipped from New Orleans for New York by the ship Toulon.

It appeared, on the trial, that some of the sacks of wheat had been damaged by actual contact with sea water; others had been damaged by dampness or sweat; and others, again, by stench and effluvia from hides, which formed part of the lading of the vessel, and had become putrid.

The defendants conceded their liability for so much of the grain as had been damaged by actual contact with sea water, and they had made payment for this before the trial. But they contended that, on the true construction of the policy, they were not liable for either the grain damaged by dampness or sweat, or for that damaged by the stench from the putrid hides. The judge directed a verdict for the plaintiffs for $10,159.98, principal and interest, subject to the opinion of the court at general term on the liability of the defendants under the policy.

The clauses of the policy important to the determination of the questions raised, are quoted at length in the opinion of BRADY, J.

*Luther R. Marsh,* for the plaintiffs.

*William D. Booth* and *Francis B. Cutting,* for defendants.

BRADY, J. This is an action on a marine policy of insurance, issued by the defendants to the plaintiffs, on 7,658 sacks of wheat, shipped at New Orleans, on board the ship Toulon, in December, 1855. The evidence showed that some of the sacks of wheat had been in actual contact of sea water, shipped in heavy weather, or admitted through leaks occasioned by severe gales. The question presented is one of construction, as will appear hereafter.

The policy is partly printed and partly in writing. By the printed memorandum, so designated in the policy, it is agreed, among other articles therein enumerated, that grain is warranted by the assured " free from average, unless general," and also " free from damage or injury from dampness, change of flavor, or being spotted, discolored, musty, or mouldy, except caused by actual contact of sea water with the articles damaged, occa-

sioned by sea perils." And further, "that, in case of partial loss by sea damage to dry goods, cutlery, or other hardware, the loss shall be ascertained by a separation and sale of the portion only of the contents of the packages so damaged, and not otherwise, and that the same practice shall obtain as to all other merchandise, as far as practicable." By the written part of the policy, on the first side or page thereof, and having priority, in the order of the agreements, over the printed memorandum and warranty, it is declared as follows : " This policy is also to cover such other shipments as the company may approve and endorse hereon. Grain, provisions in bulk, and each ten hogsheads of tobacco, in the order of the invoice, subject to average, if damaged, twenty per cent. on the river passage, or ten per cent. on a sea passage." It was conceded that the grain had been damaged by actual contact with sea water, on sea passage, ten per cent., and the defendants have paid to the plaintiffs the amount of damage arising from such actual contact of sea water in its original state, but refuse to pay for the damage beyond that, insisting that, under the warranty, they are not responsible, notwithstanding the written agreement in reference to grain herein recited.

It is said, in Phillips on Insurance, (1 Vol., § 124), that the predominant intention of the parties, in a contract of insurance, is indemnity, and that this intention is to be kept in view and favored in putting a construction upon the policy. It is also a rule well established, in the construction of instruments consisting of a printed form, that the words superadded in writing are entitled to have greater effect attributed to them than the printed words, and may supersede them, inasmuch as the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning. 1 Phil. on Ins., § 125, and cases cited. It is also said, in Parsons on Contracts, (Vol. 1, p. 28), that what is printed is intended to apply to a large class of contracts, and not to any one exclusively; that the blanks are left purposely, that the special statements or provisions should be inserted which belong to this contract, and not to others, and thus discriminate it from others. And further, (page 29), that

it is reasonable to suppose that the attention of the parties was more closely given to those phrases which they themselves selected, and which express the especial particulars of their own contract, than to those more general expressions which belong to all contracts of this class. In an action on a charter party, where a printed and written clause related to the same subject, OAKLEY, Ch. J., in deciding the question of construction submitted, said that the written clause, in accordance with a familiar principle, must govern the construction of the agreement. *Weiser* v. *Maitland*, 3 Sand. S. C. R. 318.

The written agreement in reference to grain, in the policy under consideration, is utterly inconsistent with the printed agreement which relates thereto—the former determining the defendants' liability, if the damage is equal to ten per cent. on a sea passage, in which case the grain is subject to average; and the latter absolving them from liability, unless the average is general. The former must therefore prevail, on the principles stated, unless there is something in the policy which restricts or controls it.

The questions which present themselves at this stage of the inquiry are, Did the assured warrant the grain free from average, unless caused by actual contact of sea water; and, if he did, where does such warranty appear? I have given to this branch of the case all the consideration in my power to bestow, and it is my opinion that the assured gave no such warranty. Grain was not, by the specific agreement in writing, warranted free from damage, unless the average was general; nor was that the understanding or agreement of the parties. It is true, that the word grain occurs in the printed memorandum or warranty, but it is equally true that, in the agreement to which, in that connection, it is immediately allied, namely, a warranty from damage, unless general, it is utterly repugnant to the unquestioned understanding of the parties, that the grain would be subject to average, if damaged ten per cent. on a sea passage. From this it follows, that the word grain, employed where it is in the printed warranty, must be disregarded; and, as it does not ap-

pear in any other connection with the warranty, that it should be held to have been excepted therefrom. It also follows, that there is no warranty in relation to grain, and no exception in reference thereto, absolving the defendants from liability for damage, save only that it shall not be subject to average, unless damaged ten per cent. on a sea passage.

Words of exception, used by underwriters in a policy of insurance, to exempt them from general liability, are to be construed most strongly against them, (Story on Contracts, 3d ed., 764; 1 Duer, note 2, page 211); and, where doubt arises in the construction of language, the presumption must be in favor of the assured, as the language is that of the underwriter, (1 Phillips' Ins. 698, § 1163); and the contract, as one of indemnity, is to be liberally construed in favor of the assured, (1 Duer, 161, §§ 2, 5). To construe the warranty, in this case, in favor of the defendants, would be to extend it to an article not named in it in any connection within the intention of the contracting parties, and to give the defendants the benefit of an exception which the immediate language employed by the parties would necessarily repudiate. It is my opinion, therefore, that the defendants are liable for all the damage to the grain, such damage having been occasioned by a peril of the sea. *Montoza and others* v. *The London Assurance Co.*, 4 Eng. Law & Eq. R. 500.

Assuming, however, that the warranty extends to the grain, and that the defendants are liable, the plaintiffs, on the assumption suggested, warranted the grain free from damage, or injury "from dampness, change of flavor, or being spotted or discolored, musty or mouldy, except caused by actual contact of sea water with the articles damaged, occasioned by sea perils." It might, perhaps, be sufficient to say, in reference to this clause, that the damage in this case appears to have been occasioned partly by actual contact of sea water, partly by heat or sweat generated or caused by the action of the sea water on the grain in the lower part of the vessel, and partly by fetid odors, arising from the action of sea water on the hides used in stowing the cargo; and that none of these causes, namely, heat, sweat, or fetid odors, being expressly

designated in the warranty, they are not covered by it, and the defendants are absolved. But I propose to consider the operation of the clause in question in its broadest view, as presented by the defence. It is conceded, as before stated, that a damage of ten per cent. to the grain was occasioned by actual contact of sea water, and it appears abundantly, assuming heat or sweat to be either dampness or to have caused a change of flavor, mustiness, or mouldiness, that the water, so in contact with the grain, was the *causa causans*, and damaged the balance, excepting, however, therefrom that portion which was injured by fetid odors arising from the action of the water on the hides. The damage was, therefore, in the language of the warranty, caused by actual contact of sea water with the articles damaged. If the correct construction of the warranty be, that the whole bulk of the article damaged shall be so damaged by actual contact of sea water in its original state, then the specifications in the warranty of dampness, change of flavor, or being spotted, discolored, musty, or mouldy, are entirely superfluous, and the agreement must be held to be, " warranted free from damage or injury, unless caused by actual contact of sea water," because there can be no doubt that, under the warranty, whatever the character of the injury may be which results from actual contact of sea water, whether dampness or mouldiness, or change of flavor, it is one for which the defendants would be chargeable. These words, dampness, change of flavor, or being spotted, discolored, musty or mouldy, can, therefore, have no other purpose or effect than to enlarge the undertaking of the underwriters to pay for injuries arising from those causes, or either of them, occasioned by, or resulting from, actual contact of sea water with some part of the article insured and damaged; and this is the construction which I adopt of the clause in question, assuming that it is applicable to the assured, which I do not admit. I think it may also be said with equal force, as matter of construction, founded on the principles already stated, that if part of the article insured be submerged, or immersed in sea water, occasioned by a peril of the sea, and the sea water be communicated indirectly by absorption, or

makes its way, upon any other principle of natural philosophy, from the article so wet to any part of the same article, the contact contemplated by the policy is created ; or, in other words, if a portion of the article insured be damaged by actual contact of sea water in its original or fluid state, and other portions of the article insured be damaged by any cause occasioned by such contact, that the defendant would be liable under the warranty contained in the policy secured by the defendants. It is my opinion, therefore, that the defendants are liable for the damage shown to have been occasioned by the actual contact of sea water with grain, and for the damage resulting therefrom, on the assumption that the warranty applies to the assured.

It is my opinion, however, for the reasons heretofore given, that the sea water clause is inapplicable to the insured, and that he is entitled to judgment for the amount found by the jury, with interest.

INGRAHAM, First Judge.—I concur with Judge BRADY in the opinion, that where part of the wheat was damaged by actual contact with sea water, and the residue was damaged by dampness in consequence of such actual contact of part with sea water, that the plaintiffs are entitled to recover for such damage, both from actual contact, and the dampness to the residue arising from such contact.

The warranty is free from damage from dampness, change of flavor, color, &c., except caused by actual contact of sea water with the articles damaged. The dampness referred to in the warranty, is dampness to the article when it has not come in contact with the water. Where such contact has taken place, the insured are entitled to recover for all the damage done by such contact with sea water, whether caused by immersion in the water, or caused by dampness communicated to the upper portion from the contact with sea water of the lower portion.

But I do not concur in that construction of the policy, by which the article of grain is to be considered as stricken from the warranty by reason of the written portion of the policy,

which makes grain subject to average if damaged ten per cent. on the sea passage.

By the printed part of the policy, grain is free from average unless general. This is to be controlled, by the written portion of the policy, so as to read according to such written portion of the policy; and the warranty then applies to it in the amended form, so that the policy will insure the plaintiffs against loss on grain subject to average, if damaged ten per cent. on the sea voyage, but with the warranty that it should be free from damage except by actual contact with sea water.

As some of the damage in this case was occasioned by the smell from the hides, the defendants are not, under any construction of the policy, liable therefor. The amount of such damage does not appear, by the case, distinct from the other damage, and a new trial may be necessary, unless the parties agree to a reference to ascertain the amount of damage, excluding the portion so injured.

DALY, J., concurred.

New trial ordered—costs to abide the event, unless the parties agree to refer the case to a referee to compute the amount of damages, as suggested in the opinion of the first judge.[1]

---

[1] This case was decided at August term, 1857, by INGRAHAM, first judge, and DALY and BRADY, associate judges; but was not reported in its order as to date, because the parties agreed to a reference, and the case was again brought before the court upon an appeal from the decision of the referee. It was therefore deemed desirable to have the whole case, with the decisions, reported in connection.