ZEB. F. WETZELL AND ANOTHER *v.* WILLIAM B. DINSMORE, PRESIDENT OF ADAMS EXPRESS CO.

On the trial of an action against a common carrier for goods lost, the plaintiff put in evidence the carrier's receipt, which contained conditions restricting the carrier's common law liability; *Held,* that the plaintiff could not recover, except as according to the receipt, unless he showed that he had at the time of the shipment no notice of, and did not assent to, the conditions limiting the carrier's liability.

Where the receipt of a common carrier contained a clause limiting his liability to $50 for "the article" forwarded, but the receipt was for "one package (3 cases Drugs);" *Held,* that the shipper could recover $50 for each case lost.

APPEAL by defendants from a judgment entered on the decision of a judge at special term.

The facts are stated in the opinion.

On the trial the following opinion was delivered:

DALY, CH. J.—The complaint was against the defendants upon their common law liability. The defendants in their an-

swer set up the receipt or bill of lading as the contract under which they agreed to transport the property. If the plaintiffs had proved orally the delivery of the goods to the defendants for carriage, I would be justified in finding that they took them subject to their extraordinary common law liability. But the proof which they introduced of the delivery and acceptance was the bill of lading, and as we held in *Lamb* v. *The Camden, &c. R. R. Co.* (2 Daly, 481), if the plaintiff relies upon the bill of lading as *evidence of the contract to carry*, he cannot adopt one part of it and reject the rest. If it is to be used at all as an instrument of evidence on his part, it must be taken altogether, and the contract collected from all that is contained in it. If offered by the carrier, on the contrary, as we held in the same case, it is ineffectual to prove a special contract, limiting his liability, unless the owner's assent is shown or can be assumed from the circumstances given in evidence in connection with it. In the one case, the writing or instrument is offered as the act of the defendant to charge him, and he is entitled to have the whole of it taken together (1 Greenleaf's Ev. 201). In the other case, the carrier introduces it as his own special act of acceptance, which of itself is not sufficient to show that the owner assented to, and was bound by, it.

Taking the bill of lading, then, as evidence of the contract, it has been held under a special clause, like the one contained in this, that the carrier is liable only to the extent of $50 (*Newbergher* v. *Howard & Co.'s Express*, Legal Int. June, 1866; Redfield on Carriers, § 64); and the only remaining question is, whether the three cases which were bound together so as to form one package, are to be taken as separate articles, or unitedly as one article. The words of the contract are: " Fifty dollars, at which *the article* hereby forwarded is valued;" and the writing in the body of the receipt specifies what was received, as follows: " One pkge. (3 cases Drgs.), value not given." I think the receipt itself settles the question; and the plain meaning of it is, that there were three articles in one package; and such was the fact. There were three wooden boxes, each weighing forty pounds, which were strapped and cleated together in one package. Each was branded, " 12 doz.

Shallenberger's Fever and Ague Antidote;" and each marked with the plaintiffs' name and address, "St. Louis, Mo." So that if separated, each box being properly marked, could be separately carried and delivered, which event happened, for the defendants delivered only one of the cases. The other two were lost, or the defendants failed to deliver them.

The word *article*, as defined by lexicographers, is "a distinct portion or part, a joint or a part of member, one of various things," &c. It is a word of separation to individualize and distinguish some particular thing from the general thing or whole of which it forms a part, as an article in an agreement, an article of faith, an article of a newspaper, or an article of merchandise. It is derived from the Greek, the original or radical word meaning to join or to fit to as a part, and it is only very recently, as will be found by consulting the dictionaries (see Allison's American Dictionary, 1813; Worcester's Dictionary, ed. 1847), that it has been applied to denote such material or corporeal things as goods or physical property, and then only in the sense of something that is separate and individual in itself, as salt is a necessary article, or a hammer is a useful article.

In *Earle* v. *Cadmus* (2 Daly, 237), the defendant stipulated that he was not to be liable in the carriage of baggage for an amount exceeding fifty dollars *upon any article*. Here the word was properly used, and meant any article coming under the denomination of baggage; the law having to a large degree settled what articles, carried by a traveler, do or do not, come under the designation of baggage. In this case of *Earle* v. *Cadmus*, the plaintiff lost her trunk which she had entrusted to the defendant, an expressman, to carry, and he insisted that the word article in his stipulation applied to the trunk as a whole, and not to the articles contained in it, which separately estimated, amounted to $355, no one article exceeding $40 in value. But we held that this limitation applied to the articles in the trunk and not to the trunk collectively as one article. In the present case, the language used in the printed stipulation is " *The article forwarded*," and was no doubt intended by the defendants, to cover all that was acknowledged as received

by them for carriage, no matter of how many articles it might
consist, for there is no end of the attempts of common carriers,
especially since their right to make agreements limiting their
liability has been fully conceded, to resort to all kinds of in-
genious contrivances, particularly in the use of language, to
escape from or diminish their responsibility in the event of loss.
Indeed some of the printed stipulations which have been before
us during the past two or three years, have been so comprehen-
sively framed, as to make it difficult to imagine any conceivable
case in which the carrier could be liable. The clause under
consideration in this stipulation is, in my judgment, an attempt
to give for the carrier's benefit, a meaning *to a word not con-
formable to its etymology*, and which it has never acquired in
practical use.

The right of a common carrier to protect himself by notice
that he will not be responsible for property beyond a certain
value, unless the value is disclosed to him and an additional
premium or charge paid to insure its safe carriage and delivery,
is one which the law has always favored since the early cases of
*Kenny* v. *Eggleston* (Aleyn, 93), *Tyley* v. *Morrice*, (Carthew,
485), being founded upon the plainest principles of justice, for
he is not bound to take unusual risks, except upon an adequate
compensation. But in availing himself of this right the carrier
must act fairly. He is bound to apprise the one whose property
is carried, plainly of what is required of him, and not couch his
notice or stipulation in uncertain or ambiguous language, that he
may by a certain construction of it escape responsibility in
the event of loss. In *Butler* v. *Heane* (2 Campb. 415),
where the carrier put up in his office a handbill, stating in large
print the many advantages of his route, and then in very small
characters at the bottom, that he would not be answerable for
goods beyond the value of £5, it was held that he could not
have the benefit of this stipulation. "If a common carrier,"
said Lord Ellenborough in that case, "is to be allowed to limit
his responsibility, he must take care that every one who deals
with him is fully informed of the limits to which he confines
it," and this is as applicable to the language he employs in his
notice or stipulation as it is to the way in which he prints or

posts it up or delivers it as a notice. If the defendants in this case do not intend to be responsible for the safe carriage of any amount of property or goods beyond the value of fifty dollars, unless the value is disclosed to them, and an extra charge paid for its carriage, they should say so, and not disguise their intention in such language as " the article carried ; " and if they do, the word " article " should be construed as applicable to anything to which it will apply in its ordinary, usual and etymological signification, and not with the sense they design to put upon it. In a certain sense of this word, there was but one article carried, as each box or case contained the same thing, a fever and ague remedy, but as property to be transported from one place to another, it was divided into three portable articles, each box being a separate thing, which was separately marked with the address and place of destination. From the manner in which they were strapped together, they formed one package, composed of three articles, and that the defendants themselves so regarded them, appears from the entry which they made in the bill of lading or receipt, of one package consisting of three cases of drugs.

There is no ground for the point taken by the plaintiffs in respect to the defendant's negligence, for there is some evidence of the manner of the loss of the two boxes, namely a probability that they were lost or destroyed at a fire which occurred in the defendant's office in Cincinnati.

The plaintiff is entitled to recover $100, and interest.

*Blatchford, Seward & Griswold,* for appellants.

*Enoch L. Fancher,* for respondents.

By the Court.*—Robinson, J.—The contract of defendants (partly printed and partly written) as alleged in the answer, was produced on the trial by the plaintiffs and relied upon as the evidence of the defendants' obligation. No question, therefore, can arise upon any other responsibility than

---

* Present, Robinson, Larremore and J. F. Daly, JJ.

what it imports, predicated upon the general liability of a. common carrier and his common law obligation, without further proof that the receipt or contract, made or delivered on his. part, was without notice to or assent by the owner to the special and limited obligations contained in *covert* conditions printed thereon and attempted to be affixed to the common law obligations of the carrier, without assent of the owner (*Lamb* v. *Camden, &c. R. R. Co.* 2 Daly, 481). The case is then dependent upon the construction to be given to the receipt given by defendants. for " one package (3 cases drgs.)," as to which it was agreed that in no event should the holder of the receipt " demand beyond. the sum of fifty dollars, at which *the article* forwarded is hereby valued, unless herein expressed."

In *Earle* v. *Cadmus* (2 Daly, 237) it was decided in this. court, at general term, that the terms, " any article," in such a receipt referred to any separate article. In the present case,, each case contained in the package of three cases, was of the. actual value of $113 50, two of which through the defendants' default were lost, and judgment has been given therefor at a. valuation of $50 each.

Were the case at general term of this court, above cited, not authoritative, the present case would require a like construction. The parties contracted with reference to a " package," which, as they yet expressed, consisted of *three* *cases*. They thus made reference to the particular subjects of their contract (*Woodruff* v. *Commercial M. Ins. Co.* 2 Hilt. 122), and had in contemplation the necessity of defining with particularity their meaning of the word " article," as constituting a designated part or member of the whole package. The effect of thus specifying the contents of the package, evidenced that their minds contemplated something beyond its general description, and for the purposes of the contract extended its operation to the particularly designated *articles* as " three cases," intended as distinguished from the term " package."

The reasons assigned by Chief Justice Daly for this decision should be accepted as satisfactory grounds for sustaining it.

The judgment should be accordingly affirmed, with costs.

Judgment affirmed.